```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DIEDRE DANIEL, as mother and natural
guardian of K.C.,

                        Plaintiff,                              14-cv-00259 (PKC)

            -against-                                           MEMORANDUM
                                                                AND ORDER

P.O. JONATHAN RIVERA, P.O. KEVIN
FRANCO, DETECTIVE MICHAEL MIELE,
DETECTIVE RICHARD ELLIOT, DETECTIVE
JOSUE CARBAJAL, DETECTIVE RICHARD
GIALLORENZO, LT. KEVIN WALSH, and LT.
DAVID GLASSBERG,

                        Defendants.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

On December 19, 2013, K.C., then age 15, was seen fleeing from police officers carrying what appeared to be a gun. It was a toy gun, but without the bright orange tip required by local law. (Jacobs Decl. Ex. E.) K.C. was shot three times by Police Officer Rivera of the New York Police Department ("NYPD"), and has survived the shooting.

Plaintiff Diedre Daniel, as mother and natural guardian of K.C., brought various claims pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) After two amendments, the operative complaint—the Third Amended Complaint ("TAC")—was filed on May 16, 2014. (Dkt. No. 9.) At pretrial conferences on December 12, 2014 and June 7, 2016, plaintiff voluntarily dismissed certain claims against the City of New York, the Administration of Children's Services ("ACS") and its employees, and certain individual officers. (Dkt. No. 53, 98.) Remaining are an excessive force claim against Officer Jonathan Rivera of the NYPD, and failure to intervene claims against Detectives Michael Miele, Josue Carbajal, Richard Giallorenzo, and Richard

Elliot, Lieutenants Keven Walsh and David Glassberg, and Officer Kevin Franco, all of the NYPD.  The remaining defendants now move for summary judgment on plaintiff's excessive force and failure to intervene claims.  (Dkt. No. 99.)  For the following reasons, the defendants' motion is granted in part and denied in part.

BACKGROUND

On December 19, 2013, Police Officers Jonathan Rivera and Kevin Franco were working as partners.  (Rule 56.1 Counterstatement ¶ 7.)[1]  Both in uniform, Officers Rivera and Franco were approached by a woman, who they testified told them that she saw an individual with a firearm.  (Id. ¶ 8-9.)  "As Officers Rivera and Franco approached the intersection of Blake and Rockaway Avenues, they noticed several kids screaming and running towards Rockaway Avenue on Blake Avenue."  (Id. ¶ 10.)  According to Officers Rivera and Franco, one of the kids informed them that an individual in a red coat had a gun.  (Rule 56.1 Statement ¶ 11.)  Officers Rivera and Franco spotted K.C., who was wearing a red jacket.  Upon seeing Officers Rivera and Franco, K.C. "immediately fled from the police," knowing that the imitation firearm he had in his possession was illegal.  (Rule 56.1 Counterstatement ¶¶ 15-16.)  K.C. held the imitation firearm in his right hand as Officers Rivera and Franco pursued him on foot.  (Id. ¶¶ 17-18.)  Shortly after the pursuit began, Detectives Richard Elliot and Richard Giallorenzo—both in plainclothes—"observed Officers Rivera and Franco in a foot pursuit and joined the pursuit behind them."  (Id. ¶¶ 21-22.)

What followed next is heavily disputed by the parties.  Defendants contend that while fleeing from the police, K.C. turned to look behind him, and according to Officer Rivera,

---

[1] Unless otherwise noted, citations to (Rule 56.1 Counterstatement ¶ __) refer to undisputed facts submitted by plaintiff in response to Defendant's Local Rule 56.1 Statement.

K.C. "bladed" his body "in order to fire what appeared to be a handgun." (Rule 56.1 Statement ¶¶ 23-24.) It is unclear what it means to "blade" one's body, and Daniel points out that the term is undefined by defendants. (Rule 56.1 Counterstatement ¶ 24.) The Court cannot find a definition for the word in the context of a person's motion. Officer Rivera used the word only once during his deposition, testifying that K.C.'s "shoulders were both pretty much bladed in my direction with his hands up." (Rivera Dep. 67.) As best the Court can tell, to "blade" one's body simply means to turn around so that the person's shoulders and head are perpendicular to their original position. This would be consistent with Officer Rivera's remaining testimony, in which he states that K.C. "started turning with his shoulders and lifting his hand." (Rivera Dep. 68.) While K.C. does not dispute that he turned his head to look behind him while fleeing, he alleges that he never "bladed" his body or turned around, other than to turn his neck to look behind him. (Rule 56.1 Counterstatement ¶¶ 23-25.) It was at this point that Officer Rivera discharged his service weapon for the first time, firing six rounds at K.C. (Id. ¶ 26.) Although K.C. was struck once in the left buttock, he continued to run. (Id. ¶ 27; K.C. Dep. 159.) It is disputed to what extent, if any, Officer Rivera was aware that he struck plaintiff. (Rule 56.1 Statement ¶ 28; Rule 56.1 Counterstatement ¶ 28.) Following the first volley of gunshots, defendants allege that "plaintiff again bladed his body and Officer River fired a second series of two shots." (Rule 56.1 Statement ¶ 29.) K.C. admits that Officer Rivera fired two additional gunshots, but disputes that he "bladed his body." (Rule 56.1 Counterstatement ¶ 29.)

       K.C. subsequently stumbled several feet from the entrance to 512 Mother Gaston Boulevard, dropping the imitation firearm in the process. (Id. ¶ 31.) Defendants contend that when K.C. stood up, he picked up the imitation firearm and "turned towards the police and appeared to raise the weapon." (Rule 56.1 Statement ¶¶ 31-32.) K.C. disputes this assertion,

alleging that while he stood up, picking up the imitation firearm in the process, he "neither turned toward Officer Rivera nor raised the toy gun in his direction." (Rule 56.1 Counterstatement ¶ 32.) It is undisputed, however, that upon standing up, Officer Rivera discharged his weapon for the third and final time, firing a total of eight rounds. (Id. ¶ 33.) Whether K.C. surrendered prior to Officer Rivera firing "the final grouping of shots" is also disputed by the parties. (Rule 56.1 Statement ¶¶ 33-35; Rule 56.1 Counterstatement ¶ 33-35.)

LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law. Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c)(3), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Rule 56(a), Fed. R. Civ. P.

DISCUSSION

   A.  Excessive Force Claim

Defendant Officer Rivera moves for summary judgment on the claim of excessive force, arguing that his use of force was objectively reasonable.  Based on the evidence presented, including video recordings of the incident, the Court concludes that genuine issues of material fact exist as to whether the use of deadly force by Officer Rivera was reasonable.

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard."  Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014) (citing Graham v. Connor, 490 U.S. 386 (1989)).  To prevail, a plaintiff must show that officers' use of force was "'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Graham, 490 U.S. at 397.  In evaluating whether the amount of force used against a plaintiff was reasonable, the Court should consider: "[i] the severity of the crime at issue, [ii] whether the suspect poses an immediate threat to the safety of the officers or others, and [iii] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  Pelayo v. Port Auth., 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012) (quoting Graham, 490 U.S. at 386) (alterations in original).  "[A]n officer's decision to use deadly force is objectively reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'"  Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 762 (2d Cir. 2003) (quoting O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003)).  "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable."  Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (Sotomayor, J.).

Officer Rivera discharged his weapon on three occasions, firing a total of 16 rounds. (Rule 56.1 Counterstatement ¶¶ 26, 29, 33.) The reasonableness of Officer Rivera's actions depends on his "knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force." Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996). The operative question, therefore, is whether when Officer Rivera fired his weapon, "he reasonably believed that [K.C.] put his life or person in danger." Cowan, 352 F.3d at 762.

After reviewing the evidence, the Court concludes that there are genuine issues of material fact in dispute as to the reasonableness of Officer Rivera's use of force. Critical to Officer Rivera's motion are the video recordings of the foot pursuit, which he contends unequivocally show that immediately before each time he discharged his weapon, K.C. "bladed" his body, which made it appear as if K.C. was about to fire his imitation handgun. (Rule 56.1 Statement ¶¶ 24-25, 29, 32-33.) Rivera specifically testified that K.C.'s "shoulders were both pretty much bladed in my direction with his hands up." (Rivera Dep. 67.) While the video shows that K.C. turned his head to look back at the officers in pursuit on several occasions, the extent to which K.C. "bladed" his body towards Officer Rivera, if at all, is a matter open to reasonable interpretation. (Jacobs Decl. Ex. D.) Viewing the evidence in a light most favorable to K.C., a reasonable jury could conclude that K.C.'s motions did not pose an immediate risk of harm to Officer Rivera or others. See Tennessee v. Garner, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

B. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional

right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). "[T]he qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995). An officer acts are objectively reasonable if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Granting a defendant's motion for summary judgment on qualified immunity grounds is appropriate where "'no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ] to believe that he was acting in a fashion that did not clearly violate an established federally protected right.'" Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999) (quoting Lennon, 66 F.3d at 420).

    Even assuming that Officer Rivera violated K.C.'s constitutional right, he argues that he is entitled to qualified immunity because there is no clearly established law preventing him from using deadly force against a fleeing suspect who appears to be carrying a firearm and "believing that plaintiff was preparing to fire upon him or his fellow officers." (Defs.' Br. 9.) However, the Supreme Court has held that a police officer could not use deadly force to stop a fleeing suspect who "poses no immediate threat to the officer and no threat to others." Garner, 471 U.S. at 11. Genuine issues of material fact regarding the reasonableness of Officer Rivera's use of deadly force are disputed and preclude summary judgment at this stage. Thomas, 165 F.3d at 143 ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

C. Failure to Intervene Claim

Defendants also move to dismiss plaintiff's failure to intervene claims against all remaining defendants. Daniel concedes that the failure to intervene claims against all defendants other than Officer Franco should be dismissed. (Pl.'s Opp'n Br. 6, 14.) Accordingly, the motion for summary judgment as to those defendants is granted. With respect to Officer Franco, the Court need not parse through each instance of Officer Rivera's use of force to determine whether and if Officer Franco had "a realistic opportunity to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Officer Franco concedes that, at least at some point during the pursuit, "had there been a constitutional violation, Officer Franco would have been geographically situated in a position to intervene," and whether "there was sufficient time to do so prior to Officer Rivera firing remains an open question." (Defs.' Reply Br. 9, n.7.) Accordingly, Officer Franco's motion for summary judgment is denied.

CONCLUSION

Summary judgment is GRANTED as to Detectives Miele, Carbajal, Giallorenzo, and Elliot, as well as Lieutenants Walsh and Glassberg. Summary judgment is DENIED as to the excessive force claim brought against Officer Rivera and the failure to intervene claim brought against Officer Franco. The Clerk is directed to terminate the motion (Dkt. No. 99), and to amend the caption to reflect that Officers Rivera and Franco are the only remaining defendants in this case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
      October 13, 2016